UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DUANE K. BROWN, | ) | CASE NO. 3:09 CV 1655 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| TERRY J. COLLINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pro se plaintiff Duane K. Brown filed the above-captioned action under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction Director Terry J. Collins and Ohio Adult Parole Authority Chairperson, Cynthia Mausser. In the complaint, plaintiff alleges the use of the current Ohio parole guidelines to determine his suitability for release is a violation of ex post facto prohibitions. He seeks an immediate parole hearing using the parole guidelines in place when he was first taken into custody. Mr. Brown also filed a Motion to Amend his Complaint to correct spelling errors (ECF # 4) and a Motion to Amend his Complaint to add a document as an exhibit (ECF # 5). Those Motions are granted.

**Background**

Mr. Brown was within two months of release from parole for a robbery conviction

when he committed a series of crimes in 1979. He was involved in a series of robberies and burglaries. In one of the robberies, he attempted to shoot one of the store employees and he threatened to kill the victims of his next robbery. One month later, he killed one of the robbery victims who was going to testify against him. He wounded another individual who provided information to the police. He was convicted of two counts of aggravated robbery, one count of felonious assault and one count of aggravated murder. He was sentenced to 15 years to life imprisonment.

Prior to 1987, parole hearings and decisions were made with few external constraints. The Parole Board was given broad discretion to determine each inmate's suitability for release, limited only by the minimum sentence and maximum sentence imposed by the court. In the face of criticism concerning the inconsistency of parole recommendations, parole guidelines were developed in 1987. The guideline system consisted of five components: Risk Scale, Offense Scale, Institution Adjustment Scale, Matrix and the felony level of the sentence the inmate was serving.

Mr. Brown first became eligible for parole in January 1994. His release was considered under the parole guidelines developed in 1987. He was assigned a risk score of 3 and a guideline range of 4. He claims he was given a five year continuance under the guidelines.

On July 1, 1996, Ohio Senate Bill 2 went into effect. Before Senate Bill 2, inmates received an indefinite sentence and the Ohio Adult Parole Authority ("OAPA") determined the amount of time the inmate would serve before being released on parole. Inmates convicted after July 1, 1996 generally received a definite term of incarceration. Because there was no longer a minimum and maximum sentence, there was no need for a parole system for inmates sentenced after

Senate Bill 2. Instead, a term of supervised release was added to their sentences.

In response to Senate Bill 2, the Parole Board revised the parole guidelines in 1998 and again in 2000 to give a projected parole release date to those inmates who were convicted prior to July 1, 1996 and who did not get the benefit of a definite sentence. To determine the projected release date, the guidelines assigned a numerical offense category to an inmate based upon the nature of his or her crime, and a risk score based upon several factors including the inmate's criminal record, and institutional behavior. The two numbers were then placed on a grid which determined the recommended range of time in terms of the number of months that the inmate should serve before he or she would be considered suitable for parole release ("the guideline range"). The projected release date was set for a period time within the guideline range. These guidelines were not mandatory and the OAPA had the discretion to depart upward or downward from the guideline score. Inmates objected to this change in the guidelines claiming that although they were given parole hearings at the expiration of their minimum sentences, they really had no chance of release on parole at that time because the minimum sentence was generally not within the guideline range.

Mr. Brown's second parole eligibility hearing took place under these guidelines on January 20, 1999. His most severe conviction offense, aggravated murder, was assigned to offense category 13. His risk score was calculated to be a 3. Under the 1998 guidelines, it was determined that Mr. Brown should serve a minimum of 330 to 360 months before being considered for release. He was given a ten year continuance.

In 2007, the OAPA again revised its parole guidelines to incorporate the substantive modifications imposed by recent Ohio Supreme Court decisions and to give consideration to current definite sentences imposed for similar offenses under Senate Bill 2. Under the 2007 guidelines, the

low end of the guideline range became the actual minimum sentence the inmate received by the sentencing court.  The upper end of the guideline range reflects the amount of incarceration that the inmate would have received as a definite sentence if he or she had been convicted after Senate Bill 2.  Offenses carrying a maximum sentence of life (including murder) are all classified in the highest offense category, "13."  For inmates in category 13, the guideline range is always going to be the inmate's minimum sentence to the inmate's maximum sentence, and the OAPA has complete discretion to grant or deny parole.  In addition, inmates will no longer receive a projected release date unless that release date is within 5 years of the hearing.  If the board determines that the inmate is not suitable for release within 5 years, the hearing will be continued.  The first continuance can be up to ten years.  Thereafter, the hearing may only be continued for five years, unless a longer continuance is approved by the Central Board of Review.

       Mr. Brown was seen by the parole board in November 2008, two months prior to his scheduled parole hearing.  His offense category continued to be a 13 and his risk score a 3.  Under the 2007 guidelines, his range was now 0 to 888 months, essentially his minimum and maximum sentence.  The Central Board reviewed his case and citing "the cruelty and brutality shown his victims who were shot, beaten with weapons, or threatened with death" and "his spree of multiple violent offenses...unusual in both duration and magnitude" culminating in "the killing of a witness providing testimony against him," denied release and continued his hearing 60 months to March 2014.  (Compl. Ex. G2-5)  The Central Board also noted that "there is substantial reason to believe that the inmate will engage in further criminal conduct... ."  (Compl. Ex. G2-6.)

       Mr. Brown objects to the use of the guidelines derived after his conviction.  He claims they subject him to greater punishment in violation of the prohibition against <u>ex post facto</u>

laws. He asks this court to order that he immediately be given a new parole hearing using the parole system in place in 1979.

**Analysis**

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; Siller v. Dean, No. 99-5323, 2000 WL 145167 , at *2 (6th Cir. Feb. 1, 2000); see Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); In re Bendectin Litig., 857 F.2d 290, 300 (6th Cir.1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims). For the reasons stated below, this action is dismissed pursuant to 28 U.S.C. § 1915A.

The relevant inquiry in an ex post facto claim is whether the new guidelines present a significant risk of increasing the plaintiff's amount of time actually served. See Garner v. Jones, 529 U.S. 244, 255 (2000)("When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the current rule"); Michael v. Ghee, 498 F.3d 372, 380-85 (6th Cir. 2007). Mr. Brown can set forth an ex post facto claim in one of two ways. First, he can establish an ex post facto violation if the guidelines, on their face, show a significant risk of increased incarceration. Garner, 529 U.S. at 255; Michael 498 F.3d at 384. Second, when the guidelines do not by their own terms show a significant risk, he may state a claim by

"demonstrating by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines]." Garner, 529 U.S. at 255; Michael 498 F.3d at 383.

Mr. Brown does not set forth a valid ex post facto claim with regard to the use of the 2007 guidelines. The guidelines on their face do not create a significant risk of increasing the amount of time Mr. Brown actually will serve. Mr. Brown was convicted in 1980. Prior to 1987, the Parole Board was given broad discretion to determine each inmate's suitability for release, limited only by the maximum sentence imposed by the sentencing court. Under the 2007 guidelines, the low end of the guideline range for all offenses is the minimum sentence imposed by the sentencing court. The maximum end of the guideline range in category 13, would be Life, which was also imposed upon Mr. Brown by the sentencing court. Therefore, the applicable guideline range under the 2007 guidelines for an inmate convicted of murder, like Mr. Brown, is the indefinite sentence imposed on him by the sentencing court. This leaves the decision to grant or deny parole within the parameters of indefinite sentence to the complete discretion of the parole board. His situation is no different under the 2007 guidelines than it would have been at the time of his conviction. Mr. Brown has not set forth facts to demonstrate an ex post facto violation under the 2007 guidelines.

Insofar as Mr. Brown is challenging the use of the 1987, 1998 and 2000 parole guidelines, he is time barred from asserting those claims under 42 U.S.C. § 1983. Ohio's two year statute of limitations for bodily injury applies to §1983 claims. LRL Properties v. Portage Metro Housing Authority, 55 F. 3d 1097 (6th Cir. 1995). Mr. Brown's parole hearings under these guidelines took place in 1994 and 1999. This action was filed well beyond the expiration of the

6

two-year statute of limitations period. There would be no purpose in allowing this matter to go forward in view of the fact that it is clearly time-barred. See Fraley v. Ohio Gallia County, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998)(affirming sua sponte dismissal of pro se §1983 action filed after two year statute of limitations for bringing such an action had expired).

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915A. The court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

S/ James G. Carr
JAMES G. CARR
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[1] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.